UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDER HAGGART,

          Plaintiff,

v.

CITY OF DETROIT, et al.,

          Defendants.

Case No. 2:19-cv-13394

HONORABLE STEPHEN J. MURPHY, III

/

**OPINION AND ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT [33]**

Plaintiff Alexander Haggart sued the City of Detroit, Detroit Police Officer Theopolis Williams, and two Detroit firefighters (Chief Patrick McNulty and Deputy Chief Robert Shinske) and filed a complaint that alleged constitutional claims for First Amendment retaliation under 42 U.S.C. § 1983. ECF 1, PgID 4–5, 10; *see also* ECF 34, PgID 475 (explaining that the crux of the complaint was First Amendment retaliation). Plaintiff also asserted a claim under 42 U.S.C. § 1985 for conspiracy to interfere with Plaintiff's civil rights and a malicious prosecution claim against Deputy Chief Shinske. ECF 1, PgID 10–12.

Defendants moved for summary judgment on all claims and asserted qualified immunity defenses. *See* ECF 33, PgID 345 (noting the standard for granting qualified immunity to state actors); *see also* ECF 3, PgID 24 (affirmative defenses).[1] Plaintiff

---

[1] Because "qualified immunity is an affirmative defense," defense counsel should in the future explicitly assert that each defendant is asserting qualified immunity as a defense. *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citations omitted).

1

responded to the motion but responded only to the summary judgment arguments about the § 1983 claims against Deputy Chief Shinske and Chief McNulty. *See* ECF 34, PgID 469–74 ("The evidence raises a question of fact as to Shinske and McNulty's motivations . . . ."). The Court will therefore consider the *Monell* claim, § 1983 claim against Officer Williams, the § 1985 claims, and malicious prosecution claim abandoned. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."); *see also* ECF 34, PgID 475. Thus, the only remaining claims are the § 1983 claims for First Amendment retaliation against Deputy Chief Shinske and Chief McNulty.

The Court will not hold a hearing on the motion. *See* E.D. Mich. L.R. 7.1(f). For the following reasons, the Court will grant summary judgment to Defendants.

## BACKGROUND

Plaintiff moonlights as a freelance photographer. ECF 34-2, PgID 499. Plaintiff photographs the aftermaths of accidents, crimes, and fires and then sells the photos to news agencies. *Id.* at 499–500. Plaintiff also posts the photos on a social media account called Southeast Michigan Fire and Weather. *Id.* at 500–01.

On the night of October 13 and the early morning of October 14, 2017, Plaintiff livestreamed a video on social media. ECF 33-1, PgID 353 (video filed in traditional manner); ECF 34-1, PgID 480. The video shows Plaintiff, a white man, and another white man, driving a vehicle slowly behind a black woman, who is walking on a sidewalk. ECF 33-1 at 0:00–3:30. Plaintiff and the other man in the vehicle claimed

2

that the woman lit a mattress on fire in a building. *Id.* at 3:20–3:30; ECF 34-2, PgID 501. The two men allegedly could not report the woman for arson because the police and fire department were not answering calls. ECF 33-1 at 3:50–4:10. The two men ultimately followed the woman for a mile until she ran into a house. *Id.* at 3:35–3:54. The two men claimed that they "held her at gun point for ten minutes" sometime during the pursuit. *Id.* at 4:35–4:38; 7:30–7:36. At one point, while driving down a street, Plaintiff stated that he had his pistol, even though he should not have been carrying it. *Id.* at 5:38–6:18. Plaintiff even asserted that he "wished he could" shoot the woman. *Id.* at 6:09–6:13. Towards the end of the video, one man asked the other, "You don't have any of the bad shit I just did on there, do you?" *Id.* at 9:50–9:58. The other man confirmed that he did not. *Id.* at 9:57–10:01. The men then talked about how Plaintiff held the woman at gun point. *Id.* at 9:58–10:16.

The next day, Patrick McNulty, Chief of the Fire Investigation Division, was notified of Plaintiff's video and began to investigate Plaintiff's conduct. ECF 34-3, PgID 536. Chief McNulty was concerned that the video showed vigilantism and so he forwarded the video to a sergeant in his office for review. *Id.* at 539–40. Chief McNulty was specifically concerned with Plaintiff's "admissions made in the video about holding [the woman] at gunpoint" and Plaintiff's lack of a concealed carry license. *Id.* at 540. "[T]he investigation encompassed the whole act, the arson, the person who committed the arson, and the subsequent detainment or following of th[e] suspect." *Id.* at 542. Later that same day, Detroit Police took over the investigation, and Chief McNulty was no longer involved in the investigation. *Id.* at 549.

3

A few days later, Plaintiff posted photos of a Detroit Fire Department vehicle outside a bar in Dearborn, Michigan. ECF 34-2, PgID 500; *see also* ECF 34-1, PgID 480–82. The vehicle belonged to Deputy Chief Robert Shinske. ECF 34-2, PgID 500. The photo went viral, and the local news featured it in a story. *Id.* at 500–01; ECF 34-6; *see also* ECF 34-1, PgID 481.[2] Deputy Chief Shinske received a five-day suspension because of the photo. ECF 34-5, PgID 604.

Two months later, Plaintiff posted another photo of Deputy Chief Shinske's department vehicle; the vehicle was smashed into Shinske's house. ECF 34-2, PgID 513.

Eighteen months later, in June 2019, Deputy Chief Shinske learned that Plaintiff—who was not a Detroit Firefighter—was drinking beer and riding equipment in a firehouse. ECF 34-5, PgID 614–15; ECF 34-9, PgID 674. Under department policy, civilians are only allowed in a firehouse if they are invited but are not allowed after a certain time. ECF 34-4, PgID 580. Drinking is also forbidden inside firehouses. *Id.* at 581; ECF 34-5, PgID 622. Deputy Chief Shinske then banned Plaintiff from entering Detroit firehouses in two June 2019 orders.[3] ECF 34-9, PgID 674. Plaintiff later sued Defendants in August 2019. ECF 1, PgID 2.

---

[2] The parties failed to attach the news article as an exhibit, but it is publicly available. *See* Randy Wimbley, *Detroit fire chief investigated for taking department car to bar*, Fox 2 Detroit (Oct. 18, 2017) https://bit.ly/3aF5I5n [https://perma.cc/9ZZV-BBLZ].
[3] Oddly, no party offered Deputy Chief Shinske's orders into evidence. Thus, the duration and extent of the ban is unclear. *See* ECF 34-4, PgID 589.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). A qualified immunity analysis requires a two-pronged inquiry. First, the Court must

5

consider whether the facts, "when taken in the light most favorable to the party asserting the injury, show the [defendant's] conduct violated a constitutional right." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). Second, the Court must determine whether the right was "clearly established such 'that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Saucier*, 533 U.S. at 201–02).

The Court may use its discretion to determine which prong to analyze first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Ultimately, "[p]laintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). But "courts 'should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" *Jones v. Clark Cnty.*, 959 F.3d 748, 765 (6th Cir. 2020) (quoting *Flint ex rel. Flint v. Ky. Dept. of Corr.*, 270 F.3d 340, 346 (6th Cir. 2011)).

To establish a First Amendment retaliation claim, a plaintiff must prove three elements. First, a plaintiff must "engage[] in protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). Second, the defendant must take "an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct.'" *Id.* (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)

6

(en banc)). And third, "the adverse action" must be "motivated at least in part by the [plaintiff's] protected conduct." *Id.* (quoting *Thaddeus–X*, 175 F.3d at 394).

For the third prong, "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 399). In other words, a plaintiff must show "but-for causation." *Hartman v. Moore*, 547 U.S. 250, 260 (2006). But "[c]ircumstantial evidence like the timing of certain actions" may preclude summary judgment on the third prong. *LaPine v. Corizon Inc.*, No. 2:18-cv-10750, 2019 WL 2502735, at *9 (E.D. Mich. June 17, 2019) (Murphy, J.) (citing *Thaddeus-X*, 175 F.3d at 399); *see also Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010). The Court will separately address the First Amendment retaliation claims against Chief McNulty and Deputy Chief Shinske.

I. Chief McNulty

Plaintiff has satisfied the first two prongs of a First Amendment retaliation claim against Chief McNulty. First, Plaintiff's speech was protected. "The First Amendment protects speech that may be 'fairly characterized as constituting speech on a matter of public concern.'" *Lucas v. Monroe Cnty.*, 203 F.3d 964, 973 (6th Cir. 2000) (quoting *Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 573 (6th Cir. 1997)). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest." *Snyder v. Phelps*, 562

U.S. 443, 453 (2011) (Roberts, C.J.) (cleaned up). When a Detroit Fire Department vehicle is parked outside a bar, it is a matter of public concern. *See Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006) ("Exposing governmental inefficiency and misconduct is a matter of considerable significance.").[4]

Second, enduring a criminal investigation is an adverse consequence that would deter an ordinary person from engaging in protected conduct.[5] *See Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012) (noting that a threated governmental investigation would deter an ordinary person from engaging in protected conduct) (citing *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011)). Chief McNulty confirmed that he "initiated" "the Haggart investigation." ECF 34-3, PgID 536–37.

Yet, despite showing the first two prongs against Chief McNulty, Plaintiff cannot prove the third prong. Put simply, Chief McNulty ordered the vigilante investigation *before* Plaintiff ever posted the photos of Deputy Chief Shinske's work vehicle. Plaintiff thus cannot show a causal link between posting the photos on social media and ordering the investigation. *See Maben*, 887 F.3d at 262. What is more,

---

[4] Consider also Shawn Ley and Dane Kelly, *Detroit Fire Department report finds 40% of firefighters have witnessed drinking on the job*, Click on Detroit (May 14, 2021) https://bit.ly/3oKrqwK [https://perma.cc/QGE7-XRQW]; Shawn Ley and Dane Kelly, *Changes put in place in wake of Detroit Fire Department drunk driving incidents*, Click On Detroit (May 7, 2021) https://bit.ly/2YEtonJ [https://perma.cc/68SE-YTSV]; Robin Murdoch and Jack Nissen*, Detroit fire chief crashed department vehicle while under influence of alcohol, sources confirm*, Fox 2 Detroit (Mar. 1, 2021) https://bit.ly/2WXHcsT [https://perma.cc/93QH-8K4M].
[5] Because Chief McNulty had no role in Plaintiff's ban from fire stations, the Court need not analyze the conduct under a First Amendment retaliation claim related to Chief McNulty. ECF 34-4, PgID 581; ECF 34-5, PgID 610.

8

Chief McNulty had no meaningful role in the investigation after the police department took over, which was also before Plaintiff posted the photos on social media. ECF 34-3, PgID 549. Without evidence that can support a finding on the third prong, no constitutional violation occurred, and thus Chief McNulty is entitled to qualified immunity. The Court will therefore grant Chief McNulty summary judgment.

II.   Deputy Chief Shinske

As the Court explained above, Plaintiff has satisfied the first prong of a First Amendment retaliation claim. Under the second prong, Plaintiff must show, at the present stage, that the ban from the fire department property surpasses the threshold of an "inconsequential action[]." *Thaddeus-X,* 175 F.3d at 398 (emphasis omitted).[6] The inquiry "is an objective inquiry, capable of being tailored to the different circumstances in which retaliation claims arise, and capable of screening the most trivial of actions from constitutional cognizance." *Id.*

At the present stage, Plaintiff has presented a genuine issue of material fact about the second prong. The Court cannot find, and the parties did not brief, whether the Sixth Circuit has held that a ban from a municipal building, such as a firehouse, would deter an ordinary person from exercising their First Amendment rights. Some

---

[6] No evidence shows that Deputy Chief Shinske was involved in the investigation into Plaintiff. Instead, the evidence showed only that Chief McNulty was the only Fire Department head who directed the investigation before the Detroit Police Department took over. ECF 34-5, PgID 618 ("That's the only time I've ever talked about [Plaintiff] with [Chief] McNulty, was when he mentioned that *after* [Plaintiff's] arrest . . . .") (emphasis added); *see also* ECF 34-3, PgID 536–37 (Chief McNulty explaining that he began the investigation into Plaintiff).

9

federal courts have found that bans from certain public spaces are adverse actions that would deter an ordinary person from engaging in protected conduct. *See Seum v. Osborne,* 348 F. Supp. 3d 616, 623, 632 (E.D. Ky. 2018) (finding that a ban "from the third floor of the Capitol Annex" would chill the First Amendment expression of an ordinary person, including the plaintiff who was a "citizen advocate"); *Stark v. City of Memphis*, No. 19-2396, 2020 WL 8770177, at *16 (W.D. Tenn. Feb. 18, 2020) ("[A] ban from police property is a serious sanction for a prosecutor—especially a prosecutor who, like [the plaintiff], had an office in a police building."). Here, Plaintiff is not a firefighter but a freelancer who presumably accesses Detroit firehouses to maintain relationships with firefighters. *See* ECF 34-2, PgID 515; ECF 34-5, PgID 579. At minimum, it is for a jury to determine whether banning Plaintiff from entering firehouses meets the second prong of a First Amendment retaliation claim. *See Bell v. Johnson,* 308 F.3d 594, 603 (6th Cir. 2002) ("Thus, unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury.") (quoting *Thaddeus-X*, 175 F.3d at 398).

Yet, for the third prong, Plaintiff has again shown no evidence of but-for causation. First, Plaintiff cannot even show a bare temporal proximity link between the two events because the events occurred more than eighteen months apart. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (per curiam) ("In theory, temporal proximity between the protected conduct and the adverse action, standing alone, may be significant enough to create an inference of retaliatory motive.") (citing *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)). Indeed, the timeline

10

shows that Plaintiff's firehouse bans were unconnected to the social media photos. ECF 34-4, PgID 580 (Deputy Chief Shinske banned Plaintiff because of inappropriate behavior at firehouses); ECF 34-5, PgID 614–15 (same); ECF 34-9, PgID 674 (same). Based on testimony before a Michigan state court, Deputy Chief Shinske explained that he issued the orders in June 2019. ECF 34-9, PgID 674; *see also* ECF 34-10, PgID 707–08. The orders therefore occurred more than eighteen months after Plaintiff's photos went viral and after Deputy Chief Shinske's five-day suspension.

Beyond lacking temporal proximity, Plaintiff offered no evidence—other than his belief—that Deputy Chief Shinske was motivated to ban Plaintiff because of the photos. *See* ECF 34-2, PgID 510–13 (hearsay statements of persons who will not testify or are unnamed); Fed. R. Evid. 801(c) (definition of hearsay); *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (A plaintiff "offer[ed] no evidence to demonstrate that his [protected activities] played any role in [the adverse consequence], let alone a substantial role."). And the evidence shows that Deputy Chief Shinske had a legitimate reason to ban Plaintiff from firehouses based on Plaintiff's drinking and horsing around on department equipment. ECF 34-5, PgID 614–15; ECF 34-9, PgID 674; *see Adderley v. Florida*, 385 U.S. 39, 47 (1966) ("The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.").

In all, Plaintiff has failed to show that Deputy Chief Shinske would not have banned him but for posting the photos on social media. Because no evidence shows a

but-for causation, Deputy Chief Shinske did not violate Plaintiff's constitutional rights and is therefore entitled to qualified immunity.

Even if the Court were to find that Deputy Chief Shinske violated Plaintiff's constitutional rights, the Court would still grant qualified immunity to Deputy Chief Shinske under the second qualified immunity prong. For the second prong, the Court must determine whether Plaintiff's right against First Amendment retaliation "was clearly established such 'that a reasonable official would understand that what [s]he is doing violate[d] that right.'" *Mullins*, 805 F.3d at 765 (citing *Saucier*, 533 U.S. at 201–02). "A plaintiff can meet his burden under this prong by presenting caselaw 'with a fact pattern similar enough to have given fair and clear warning to officers about what the law requires.'" *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019) (quoting *Hopper v. Plummer*, 887 F.3d 744, 755 (6th Cir. 2018)). Although the case that a plaintiff cites "'need not be on all fours' with the instant fact pattern" the question at issue "must be so settled that 'every reasonable official would have understood that what he [was] doing violate[d] [the] right' at issue." *Id.* (quotations omitted).

Plaintiff has cited no case law that holds retaliating against someone by banning the person from firehouses (or even municipal buildings where the public must be invited to enter) is clearly established as a First Amendment violation. *See* ECF 34, PgID 474. As the Court explained earlier, two district courts within the Sixth Circuit found that banning a person from a State Capitol building and a prosecutor from their office building would deter an ordinary person from exercising their First

12

Amendment rights. *Seum,* 348 F. Supp. 3d at 632; *Stark*, 2020 WL 8770177, at *16. But Plaintiff does not work at the firehouses and department policy prohibits citizens from entering firehouses unless they are invited. ECF 34-2, PgID 510; ECF 34-4, PgID 580. Plaintiff's bans differ greatly from the bans in *Seum* and *Stark*. Plus, based on the Court's research, there is no binding Sixth Circuit precedent that holds a municipal building ban, in which a plaintiff lacks an unfettered right to enter, is an adverse action that would qualify under the second prong of a First Amendment retaliation claim. As a result, Deputy Chief Shinske is also entitled to qualified immunity because the constitutional violation that Plaintiff asserted is not clearly established. The Court will therefore grant summary judgment to Deputy Chief Shinske.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion for summary judgment [33] is **GRANTED**.

**IT IS FURTHER ORDERED** that the claims against Defendants are **DISMISSED WITH PREJUDICE**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 27, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 27, 2021, by electronic and/or ordinary mail.

s/ David P. Parker<br>Case Manager